## Varner Petition

*Helen Arseniu White,* for petitioner.

ZIEGLER, P. J., July 3, 1973.—Now, July 3, 1973, this matter comes before us on petition for voluntary relinquishment of parental rights. We assume that it was filed pursuant to section 302 of the Adoption Act of July 24, 1970, P. L. 620, 1 PS §302, which provides as follows:

"When any child under the age of eighteen years has been for a minimum period of thirty days in the exclusive care of an adult or adults who have filed a report of intention to adopt required by section 331, the parent or parents of the child may petition the court for permission to relinquish forever all parental rights to their child. The written consent of a parent or guardian of a petitioner shall be required if he has not reached eighteen years of age. The adult or adults having care of the child shall file a separate consent to accept custody of the child."

Petitioner alleges by his petition that he. was married to Linda M. Varner on January 16, 1971; that Jennifer Lea Varner was born to the marriage on July 13, 1971; that he and said natural mother have been separated since May 17, 1972; that said child has been in the exclusive care of said natural mother since separation; that he is 21 years of age, and that he desires to relinquish forever all parental rights to said child for the reasons (1) that he "believes the bests interests and welfare of said child shall be served" thereby, and (2) that he "is unable to and does not wish to care for his said child". After further alleging that he filed the petition of his own free will and accord, and without coercion, he prayed the court to enter a decree terminating all of his

parental rights, privileges and obligations forever, awarding entire parental rights and custody of said child to said natural mother and providing that said natural mother could, at any time, adopt said child without notice to him or his consent.

We believe that section 302 is inapplicable and that the court is without jurisdiction to grant the prayer of petitioner. To clarify our view, we shall glance back to prior adoption law. The Act approved April 4, 1925, P. L. 127, as amended by the act approved August 26, 1953, P. L. 1411, 1 PS 1, *et seq*, provided for (1) voluntary relinquishment to an approved agency or institution, and for (2) finding of abandonment and giving of custody to an approved agency or institution. It was a condition precedent of such proceedings that the child should have been in the care of the agency or institution for designated periods of time in advance thereof. Accordingly, there was no method under said prior law for allaying anxiety of adopting parents in so-called "private placements" during six-month waiting period required by said prior law. Such lack of method led the Joint State Government Commission to express the intention of section 302 in the following comment:

"This section, which has no counterpart in the 1925 Act, should reduce the uncertainties in private placements during the six-month waiting period required by section 501, infra."

Section 501 of present law provides for a six-month waiting period unless the court, for cause shown, determines otherwise or unless the adoptee is related by blood or marriage to the adopting parents. Section 331 of present law provides that no "report of intention to adopt" shall be required when the adoptee is related by blood or marriage to the adopting parents in certain enumerated capacities.

Therefore, if said natural mother were to obtain a divorce from petitioner and were to remarry and if she and her next husband were to seek to adopt said child, neither a six-month waiting period nor a "report of intent to adopt" would be required by present law. Since neither would be required, section 302 is inapplicable to said natural mother.

Furthermore, the petition is a purposeless legal exercise, since a natural parent may not adopt his or her legitimate child: Baltosser Adoption, 63 D. & C. 498 (1948). In addition to lack of statutory authority for adoption of one's own child to the exclusion of the other parent, such would be contrary to public policy for several reasons. First, a mother cannot, by contract, bargain away the right of her minor child to adequate support to the relief of the father: Commonwealth ex rel. Voltz v. Voltz, 168 Pa. Superior Ct. 51 (1950), and numerous other cases cited at 30 Vale Pa. D. 137, §3.1(8). A fortiori, a mother cannot, by adoption, cause to be terminated by law the right of her minor child to support. Secondly, on termination of marital status by divorce, parental status would be vulnerable to vengeful disposition of disappointed spouses. Thirdly, the child's welfare is so involved in termination of parental status that his welfare, rather than the wishes of either parent, should be the sole criterion of termination of parental status as to one parent only. Bolstered by the principle that adoption laws must be strictly construed, by the intention manifested by said comment, by decision in Custody of X, a Minor, 54 D. & C. 2d 81 (1971), by lack of statutory authority for adoption of one's own legitimate child and by public policy considerations, we conclude that the court is without jurisdiction to grant the prayer of petitioner.

Accordingly, we make the following:

## DECREE

Now, July 3, 1973, the prayer of the petition is denied and the petiton is dismissed. Exception is noted to Helen Arseniu White, attorney for petitioner.